# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WENDELL WESLEY (#568647)**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 19-141-BAJ-EWD**

**DARREL VANNOY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 28, 2022.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WENDELL WESLEY (#568647)**                  **CIVIL ACTION**

**VERSUS**                  **NO. 19-141-BAJ-EWD**

**DARREL VANNOY, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the application of Petitioner Wendell Wesley ("Wesley") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. It is recommended that Wesley's application be denied as it is untimely, and Wesley has not established entitlement to equitable tolling. There is no need for oral argument or for an evidentiary hearing.

**I.**    **PROCEDURAL HISTORY**

On April 23, 2007, Wesley was indicted in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana for second degree murder.[1] After a jury trial in April 2010, Wesley was found guilty[2] and sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[3] Wesley filed an appeal with the Louisiana First Circuit Court of Appeal ("First Circuit"), which affirmed his conviction and sentence on September 14, 2011.[4] The Louisiana Supreme Court denied Wesley's writ application on September 21, 2012,[5] and his Motion for Reconsideration on November 21, 2012.[6]

Wesley filed an application for post-conviction relief ("PCR application") at the Eighteenth Judicial District Court on or about August 28, 2013.[7] The trial court denied the PCR application

---

[1] R. Doc. 8, p. 49.
[2] R. Doc. 8, pp. 170-171.
[3] R. Doc. 8, p. 177.
[4] *State v. Wesley*, 2010-2066 (La. App. 1 Cir. 9/14/11), 77 So.3d 55.
[5] R. Doc. 13, p. 6.
[6] R. Doc. 13, p. 7.
[7] R. Doc. 13, p. 14.

on procedural grounds on October 16, 2014.[8] Wesley sought review with the First Circuit.[9] The First Circuit granted Wesley's writ on February 2, 2015, ordering the trial court to consider Wesley's PCR application on the merits.[10] On remand, the trial court again denied Wesley's PCR application.[11] Wesley sought review with the First Circuit,[12] which was denied on showing made on July 1, 2015 for failure to include required documents.[13] Wesley was given until August 24, 2015 to file a new application, which he timely submitted on July 20, 2015.[14] The writ was denied by the First Circuit on October 20, 2015,[15] and then by the Louisiana Supreme Court on March 24, 2017.[16]

Wesley filed the habeas petition with this Court on March 4, 2019,[17] asserting ineffective assistance from his trial and appellate counsel.[18]

## II. TIMELINESS

Pursuant to 28 U.S.C. § 2244(d), there is a one-year time period for prisoners in state custody to file federal habeas corpus claims. This time period begins to run on the date judgment becomes final through the conclusion of direct review or through the expiration of the time to seek direct review.[19] A properly filed application for state habeas relief or other collateral review tolls this time period.[20] After a petitioner has proceeded through all stages of direct appellate review in

---

[8] R. Doc. 13, pp. 167-169. Specifically, the trial court concluded that the claims asserted in Wesley's PCR application were not sufficient grounds for post-conviction relief and were considered by the First Circuit on direct appeal.
[9] R. Doc. 14, pp. 146-170
[10] R. Doc. 13, p. 170.
[11] R. Doc. 13, pp. 179-180.
[12] R. Doc. 14, pp. 174-212
[13] R. Doc. 14, p. 213.
[14] R. Doc. 14, pp. 214-254.
[15] R. Doc. 13, p. 187.
[16] R. Doc. 13, pp. 249-252.
[17] R. Doc. 1, p. 11.
[18] *Id.*, p. 27.
[19] 28 U.S.C. § 2244(d)(1)(A).
[20] *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019), citing 28 U.S.C. § 2244(d)(2).

the state courts, the period of direct review also includes the petitioner's right to seek discretionary review before the United States Supreme Court. As a result, after a ruling by the state's highest court on direct appeal, a petitioner's judgment becomes final when the United States Supreme Court issues a decision denying discretionary review or, if no application for review is filed, at the conclusion of the ninety-day time period for seeking review at the Supreme Court.[21]

Wesley's conviction became final on February 19, 2013, which was ninety days after the Louisiana Supreme Court denied reconsideration of his direct appeal and the last date Wesley could have sought further review with the United States Supreme Court.[22] Wesley did not file his PCR application until August 28, 2013—one hundred ninety (190) days after his conviction became final. After the First Circuit reversed the trial court's denial on procedural grounds, the trial court denied Wesley's PCR application on substantive grounds on March 9, 2015. The First Circuit denied review on October 25, 2015, and the Louisiana Supreme Court ultimately denied review on March 24, 2017. By the time Wesley filed his habeas application with this Court on March 4, 2019, another seven hundred ten (710) days of untolled time passed. Because well more than a year elapsed (nine hundred [900] days) during which Petitioner did not have any properly filed applications for post-conviction or other collateral review pending before the state courts, Petitioner's writ of habeas corpus in this Court is untimely.

Because it is untimely, this Court must dismiss Wesley's habeas application pursuant to 28 U.S.C. § 2244(d) unless he can establish that he is entitled to statutory or equitable tolling of the

---

[21] *Roberts v. Cockrell,* 319 F.3d 690, 693 (5th Cir. 2003).
[22] Respondents argue that Wesley's conviction became final on October 14, 2011, because he did not timely seek review with the Louisiana Supreme Court on direct appeal. R. Doc. 6, p. 3. The Louisiana Supreme Court indicates receipt of Wesley's writ application on direct appeal on October 17, 2011. R. Doc. 13, p. 5. Wesley has also alleged that the writ of certiorari to the Louisiana Supreme Court was filed on October 17, 2011. *See, e.g*, R. Doc. 1-1, p. 19. October 14, 2011 was a Friday and October 17, 2011 was a Monday. The record does not include Wesley's brief on direct appeal to the Louisiana Supreme Court, so it is unclear whether Wesley's request for review by that court on direct appeal was timely. Regardless, it is not necessary to reach Respondents' argument on this issue as this Report concludes Wesley's federal application is untimely for other reasons.

limitations period. To establish statutory tolling under 28 U.S.C. § 2244(d)(1)(B), Petitioner must show that some state action, in violation of the Constitution or federal law, prevented him from filing a timely petition.[23] Lack of notice has generally been analyzed under equitable, rather than statutory, tolling principles.[24] It is the petitioner's burden to demonstrate that equitable tolling is warranted.[25] The Fifth Circuit takes a holistic approach to determining whether equitable tolling is warranted—there is no bright line rule[26]—however, equitable tolling is only available "in rare and exceptional circumstances."[27] Generally, equitable tolling requires a showing of the following two elements: (1) the litigant has been pursuing his rights diligently, and (2) some extraordinary circumstance has stood in his way.[28] "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify."[29] Ignorance of the law, lack of knowledge of filing deadlines, or a temporary denial of access to research materials or an adequate law library are generally not sufficient to warrant equitable tolling.[30] Further, equitable tolling "is not intended for those who sleep on their rights."[31] Thus, a federal habeas petitioner is required to act with diligence[32] and alacrity both during the

---

[23] *See Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003).
[24] *See Phillips v. Donnelly*, 216 F.3d 508 (5th Cir. 2000) (analyzing the failure to receive notice of a writ denial under equitable, rather than statutory, tolling principles); *Critchley v. Thaler*, 586 F.3d 318, 318 n. 3 (5th Cir. 2009) ("when the state fails to provide notice of its ruling on a state habeas petition to the affected petitioner as is required by Texas law, equitable tolling rules govern that situation.").
[25] *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009).
[26] *Diggs v. Vannoy*, 840 Fed.Appx. 779, 781 (5th Cir. 2021) ("Equitable tolling is discretionary, does not lend itself to bright-line rules, and turns on the facts and circumstances of a particular case.") (internal quotations and citations omitted).
[27] *Hardy*, 577 F.3d at 598.
[28] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 2005).
[29] *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006), citing *Felder v. Johnson*, 204 F.3d 168, 174 (5th Cir. 2000).
[30] *Tate v. Parker*, 439 Fed.Appx. 375, 376 (5th Cir. 2011), citing *Felder,* 204 F.3d at 171-72 and *Scott v. Johnson*, 227 F.3d 260, 263 & n. 3 (5th Cir. 2000).
[31] *Manning v. Epps*, 688 F.3d 177, 184 (5th Cir. 2012).
[32] "The diligence required for equitable tolling purposes is reasonable diligence, . . . not maximum feasible diligence," and equitable tolling decisions must be made on a case by case basis. *Holland v. Florida*, 560 U.S. 631, 649-50, 653 (2010) (internal quotation marks omitted).

4

period allowed for the filing of state post-conviction review proceedings and after a denial of these applications for relief by state appellate courts.[33]

Here, Wesley has requested equitable tolling on the basis that he did not know the Louisiana Supreme Court ruled on his writ application on March 24, 2017, because he did not receive the decision through the mail at Louisiana State Penitentiary until he requested a status update in 2019.[34] Wesley contends that he filed his brief with the Louisiana Supreme Court on October 29, 2015.[35] He attaches to his habeas application correspondence sent on January 2, 2019 to the Louisiana Supreme Court requesting the status of the ruling.[36] He also attaches correspondence from the Louisiana Supreme Court dated January 9, 2019, which provided Wesley with a copy of the March 24, 2017 writ denial.[37] As proof that he did not receive the March 24, 2017 ruling when it was issued, Wesley also attaches a copy of his prison legal mail log from the year 2017, which shows he only received one piece of legal mail that did not originate from the Louisiana Supreme Court.[38]

Respondents argue that Wesley is not entitled to equitable tolling. In support, Respondents point to the following email from the Louisiana Supreme Court Clerk of Court's office as proof Wesley timely received the March 24, 2017 decision:

> I looked into the above matter as to why Mr. Wendell Wesley did not receive his writ decision dated 3/24/2017. Presumably, this decision was sent to him via postal mail. I do see that the envelope for Mr. Wesley was printed out on March 22, 2017 with his address at … Also, I do not see a note in our system stating that we had received returned mail for said decision. Normally if mail does not have the correct address, inmate number, or the inmate is no longer at the addressed facility, we would normally receive the return mail. If we did not receive the return mail with

---

[33] *See Ramos v. Director*, Nos. 09-463/09-477, 2010 WL 774986, at *4 (E.D. Tex. Mar. 1, 2010).
[34] R. Doc. 1, p. 10.
[35] *See also*, R. Doc. 14, p. 5.
[36] R. Doc. 1-1, p. 8; R. Doc. 14, p. 2.
[37] R. Doc. 1-1, 3-5.
[38] R. Doc. 1-1, 9-10.

5

> said decision, then presumably the facility or Mr. Wendell did received [sic] said decision.[39]

The email from the Louisiana Supreme Court merely presumes that Wesley received the decision because the court did not receive return mail. However, the 2017 legal mail log from the Louisiana State Penitentiary submitted by Wesley shows that he did not receive any mail from the Louisiana Supreme Court in 2017. Respondents do not dispute the authenticity or accuracy of the 2017 prison legal mail log. Accordingly, it appears that Wesley did not receive the March 24, 2017 Louisiana Supreme Court ruling through the mail at Louisiana State Penitentiary any time during the 2017 calendar year.

The Fifth Circuit has held that delays of four (4) months,[40] almost one (1) year,[41] and eighteen (18) months[42] in receiving notice of the denial of a state application constitute extraordinary circumstances. The delay of over twenty-one (21) months in this case, therefore, satisfies the second element of equitable tolling – that some extraordinary circumstance stood in Wesley's way and prevented timely filing. That does not end the inquiry, however. Wesley must also show that he pursued his rights diligently to take advantage of equitable tolling.[43] The promptness of filings in other cases where equitable tolling was found to be warranted or not warranted "offers useful guidance, but the equitable nature of tolling requires a holistic assessment of the petitioner's diligence."[44]

---

[39] R. Doc. 6-1.
[40] *Phillips*, 216 F.3d 508.
[41] *Hardy*, 577 F.3d 596.
[42] *Jackson*, 933 F.3d at 411.
[43] *Holland*, 560 U.S. at 649 (internal quotation marks and citation omitted).
[44] *Diggs*, 840 Fed.Appx. at 781, citing *Jackson*, 933 F.3d at 411 and *Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013). The promptness of filings throughout the state and federal levels is relevant to the inquiry. *Jackson*, 933 F.3d at 411–13.

A petitioner's diligence is generally examined at three stages when he seeks to toll the period between the denial of a state habeas petition and the filing of his federal application.[45] First, is how long the petitioner waited to file for state habeas relief. While delays of two (2) months or less to file for state habeas relief have been deemed diligent by the Fifth Circuit,[46] a delay of seven (7) months was considered dilatory, such that denial of equitable tolling was warranted.[47]

The second consideration is the petitioner's efforts to check the status of the pending state application. In *Jackson*,[48] the petitioner requested a status update at fifteen (15) months, and in *Hardy*,[49] the petitioner requested a status update after eleven (11) months. The Fifth Circuit credited the petitioners in these cases for their diligent efforts in checking the status of their pending state applications, and equitable tolling was ultimately granted. In contrast, the petitioner in *Stroman*[50] was criticized for waiting eighteen (18) months to check on the status of his state habeas application and equitable tolling was denied.

The final question is how promptly the petitioner filed his federal petition after learning that his state petition had been denied. In *Jackson*[51] and *Hardy*,[52] the Fifth Circuit found that the petitioners who only took seventeen (17) and seven (7) days, respectively, to file their federal petitions were diligent. However, the petitioner in *Stroman*,[53] who took forty-eight (48) days to file his federal petition after learning that his state petition had been denied, was not considered diligent.

---

[45] *Jackson*, 933 F.3d 408.
[46] *Jackson*, 933 F.3d at 411-412 (one-and-a-half-month delay); *Hardy*, 577 F.3d at 597 (two month delay).
[47] *Stroman v. Thaler*, 603 F.3d 299, 302-303 (5th Cir. 2010).
[48] 933 F.3d at 413.
[49] 577 F.3d at 599.
[50] 603 F.3d at 302.
[51] 933 F.3d at 412.
[52] 577 F.3d at 600.
[53] 603 F.3d at 301.

Here, Wesley's behavior is closely aligned with the petitioner in *Stroman*, who was denied equitable tolling. Wesley waited one hundred ninety (190) days (over six months) to file his PCR application after his direct appeal was final. *Stroman* was deemed dilatory by the Fifth Circuit for waiting seven months. Wesley only checked the status of his pending application with the Louisiana Supreme Court once—on January 2, 2019, over three years after it was filed. This is far beyond the eighteen (18) month delay for which the petitioner was found dilatory in *Stroman*. Finally, it took Wesley fifty-four (54) days to file his federal habeas petition after he received notice in January 2019 from the Louisiana Supreme Court that his state application had been denied in March 2017. Again, this delay is on par with the lack of diligence described by the Fifth Circuit in *Stroman*, where the petitioner waited forty-eight (48) days to file his federal application. Viewing Wesley's actions holistically at each of the relevant stages regarding his state and federal habeas petitions, he has failed to establish that he acted with diligence.

Because Wesley has not established that he pursued his rights diligently, the Court should reject his request to equitably toll the running of the applicable statute of limitations based on the delay in receiving the final decision from the Louisiana Supreme Court denying his PCR application, and Wesley's untimely application for habeas corpus relief should be dismissed.

### III. CERTIFICATE OF APPEALABILITY

Should Wesley pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[54] Although Wesley has not yet filed a Notice of Appeal the Court may address whether he would be entitled to a certificate of

---

[54] 28 U.S.C. § 2253(c)(1)(A).

8

appealability.[55] A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[56] In cases where the court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[57] Here, reasonable jurists would not debate the denial of Wesley's application or the correctness of the procedural ruling that the application is untimely and not entitled to equitable tolling. Accordingly, if Wesley pursues an appeal in this case, a certificate of appealability should be denied.

### IV. RECOMMENDATION

As the habeas application of Petitioner Wendell Wesley is untimely, and he has not established the requirements for equitable tolling, **IT IS RECOMMENDED** that the application for habeas corpus relief[58] be **DENIED** as untimely and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be denied if Petitioner pursues an appeal in this case.

Signed in Baton Rouge, Louisiana, on February 28, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[55] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[56] 28 U.S.C. § 2253(c)(2).
[57] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).
[58] R. Doc. 1.